STATE, APPELLEE, *v.* ROTHSCHILD, APPELLANT.[*]

---

[*]Motion to certify the record overruled, March 25, 1959,

(No. 2471—Decided November 18, 1958.)

*Mr. Mathias H. Heck,* prosecuting attorney, *Mr. Herbert M. Jacobson* and *Mr. Harold B. Le Crone,* for appellee.

*Messrs. Cohen, Baron, Druffel & Hogan* and *Mr. A. W. Rothenberg,* for appellant.

*Per Curiam.* Defendant, appellant herein, appeals his conviction for violation of subdivision (B) of Section 2905.342, Revised Code, by the exhibition of a film entitled ''The Garden of Eden'' and an order to destroy the film in question.

Having waived a jury, he was tried and convicted by a Judge of the Court of Common Pleas upon an information charging that ''on or about the 8th day of October, 1956, in the county of Montgomery and state of Ohio, aforesaid, one Sylvan Rothschild, did unlawfully exhibit and have under his immediate control a motion picture film, to wit: Garden of Eden, from the exhibition of which a public disorder is imminent, in that said film does advocate and teach that the violation of Section 2905.31, Revised Code, which statute prohibits the practice of nudism in the state of Ohio, as a proper and desirable course of conduct.''

Section 2905.342, Revised Code, reads as follows:

''No person shall produce, sell, lease, lend, give away, or distribute for the purpose of exhibition, or exhibit, or have in his possession or under his immediate control for any purpose:

''(A) An obscene motion picture film; or

"(B) Any motion picture film, the exhibition of which has, created a public disorder, or from the exhibition of which a public disorder is imminent.

"The exhibition of a motion picture film which teaches or advocates that the violation of any of the criminal laws of the state of Ohio or any of the criminal laws of the United States of America is a proper or desirable course of conduct shall, prima facie, be deemed to create an imminent public disorder for the purpose of initiating the arrest of any person for the violation of this section.

"Whoever violates this section shall be fined not more than five thousand dollars, or imprisoned not more than six months, or both."

Section 2905.31, Revised Code, is entitled "Nudism" which is thereby described and forbidden.

Defendant makes two assignments of error: (1) That Section 2905.342, Revised Code, is unconstitutional; and (2) that if such section is constitutional, he has not violated its provisions.

The facts are not in dispute. Defendant was manager of the Sunset Cruise-In outdoor theatre and gave seven showings of the film, "The Garden of Eden." The show was so popular as to create some traffic congestion in the vicinity. There is no evidence that it caused any violence, breach of the peace, or violation of law, or actual threat of any of these things.

It is conceded that the film is not obscene, nor does the information so charge. The film is adequately described and characterized (without important disagreement) in the briefs and arguments. It contains a plot presented in dramatic form. The action centers about a nudist camp near Tampa, Florida, where, according to the evidence, such camps are legal. Nude persons of both sexes appear together in groups but are photographed only from the rear or from the front either above the waist or with rudimentary garments. The supposed benefits. of nudism or sunbathing as promoting physical well-being and spiritual betterment are extolled.

The statute under which this charge is framed, Section 2905.342, Revised Code, became effective on October 6, 1955, and

has apparently never been judicially construed. We proceed first, therefore, to its analysis and to the question of its applicability to the facts before us.

It is directed against two separate and distinct evils: "(A) An obscene motion picture film; or (B) any motion picture film, the exhibition of which has created a public disorder, or from the exhibition of which a public disorder is imminent."

It is quite important that we distinguish these two separate and distinct offenses. They are wholly different in character, and are subject to control under separate aspects of the police power. The first is forbidden in the interest of public morals, the second in that of public safety. The first is concerned specifically with the obscene, while the second would appear to be directed to subjects which are so inflammable or controversial as to incite to bigotry, intolerance, hate, violence, etc. This is not to say that some film might not conceivably be so offensively obscene as to arouse public indignation to such a pitch as to threaten public disorder. But no such situation is presented here.

However sharply opinions may differ as to the propriety and good taste of "The Garden of Eden," yet it having been conceded that the film is not obscene, we are bound by that premise, and there is no moral issue before us.

There is no slightest evidence that public disorder has been created or made imminent by the exhibition of this film. The most that can be said is that it attracted so many patrons as to cause some traffic congestion. Box office appeal is not evil in itself, being the happy concomitant of many films of outstanding quality.

But it is argued that this exhibition makes public disorder imminent because it "teaches or advocates that the violation of any of the criminal laws [specifically Section 2905.31, Revised Code, forbidding nudism] * * * is a proper or desirable course of conduct." This argument was effectively met with the observation that legal and social progress are dependent upon our freedom to consider whether an existing law is wise or desirable. Such consideration has never been construed to be unlawful or necessarily to include the suggestion that the law under criticism should be violated. This film may imply that Section 2905.31,

Revised Code, forbidding nudism, should be repealed. There is no suggestion that it be violated. Nor, without the evil element of obscenity, can it be said to create an urge to violate it.

The language of the statute giving rise to this argument is curiously framed. It provides that teaching or advocating violation of law "shall, prima facie, be deemed to create an imminent public disorder *for the purpose of initiating the arrest* of any person for the violation of this section." (Emphasis ours.) This language may provide a defense to civil actions arising out of arrest. But under the law of strict construction applied to criminal statutes (37 Ohio Jurisprudence, 744, Statutes, Section 420), this provision cannot enlarge the definition of the offense.

It is urged that this exhibition might disturb the tranquillity of the mind to the extent of threatening public disorder—that there might be some kind of subjective public disorder or threat thereof. Criminal conviction cannot be based upon conjecture as to what reaction might possibly be set up in the mind of another. But granting that all crime must first be conceived in the mind of the accused, this statute with which we are now dealing requires that public disorder be either existing or imminent in order to constitute an offense. The facts fail to show either.

Although it is accepted on both sides as a fact that the film is not obscene, yet inherent in much of the argument is the contention that it is nevertheless evil and immoral. But unless such quality, or some other feature, creates or makes imminent a public disorder, an offense has not been committed. The fact that some may dislike or disapprove it will not authorize us to extend the statute beyond its specific terms.

Finding as we do that the facts in this case fail to constitute a violation of Section 2905.342, Revised Code, we do not reach the question of the constitutionality of that statute.

The judgment is reversed, the defendant will be released, and the film, which was seized under Section 2905.35, Revised Code, returned to him.

*Judgment accordingly.*

HORNBECK, P. J., WISEMAN and CRAWFORD, JJ., concur.